[Crim. No. 2756. In Bank.—July 15, 1925.]

## THE PEOPLE, Respondent, v. D. QUAREZ, etc., Appellant.

[1] CRIMINAL LAW—CONCEALED WEAPON—POSSESSION BY FOREIGN-BORN AND UNNATURALIZED PERSON—ELEMENTS OF CORPUS DELICTI.—In a prosecution for a violation of section 2 of the act of 1923 (Stats. 1923, c. 339, p. 696), which provides in part that no unnaturalized foreign-born person shall own or have in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person and having a barrel less than twelve inches in length, the *corpus delicti* consists of two elements: (1) the possession of a concealed weapon of the type described in said section; and (2) the foreign nativity and non-naturalization of the accused.

[2] ID. — EVIDENCE — PROOF OF FOREIGN NATIVITY — CONTINUATION OF STATUS — PRESUMPTIONS.—In such a prosecution, in addition to proving possession of the weapon of the type described in the act, the prosecution has the burden of establishing that the offender was an alien and, having proven this element of the offense, this status continues until the contrary is shown. In other words, it is unnecessary for the prosecution, after showing that the offender

---

1. Definition of *corpus delicti* and general principles of law respecting, note, 78 **Am. Dec.** 252. See, also, 8 **Cal. Jur.** 165.

was foreign-born, to further show that he had never been naturalized.

[3] ID.—CORPUS DELICTI—HOW PROVED.—The extrajudicial statements, admissions, or confession of a defendant cannot be used to establish any necessary element of the *corpus delicti* of the crime charged. The *corpus delicti* must be established by independent evidence before the extrajudicial statements, admissions, or confession of a defendant are admissible.

[4] ID.—APPLICABILITY OF RULE "AB INCONVENIENTI."—In such prosecution, the people are not relieved of the burden of proving the foreign nativity of the defendant by the rule known as the "rule of convenience."

[5] ID.—EVIDENCE—RULE OF CONVENIENCE—SPECIAL APPLICATION OF.— The "rule of convenience" to the effect that where proof of a negative averment is peculiarly within the knowledge of the defendant the burden is upon him to prove the fact so within his knowledge, has been confined to that particular line of cases where it becomes necessary, in order to constitute the offense charged, for the prosecution to prove the nonexistence of a license required by law.

[6] ID.—FOREIGN NATIVITY—EXTRAJUDICIAL STATEMENTS OF DEFENDANT — INSUFFICIENCY OF — CORPUS DELICTI. — In this prosecution the foreign nativity of the defendant, being an essential element of the *corpus delicti*, should be established by evidence independent of the extrajudicial statements, admissions, or confession of the defendant; and evidence consisting only of extrajudicial statements of the defendant that he is of foreign birth is insufficient to establish that element of the *corpus delicti*, the fact of foreign birth not coming within the rule of *"ab inconvenienti."*

(1) 2 C. J., p. 1074, n. 99 New.  (2) C. J., p. 1074, n. 4–5 New. (3) 2 C. J., p. 1074, n. 4–5 New; 16 C. J., p. 772, n. 27, 27 New. (4) 1 C. J., p. 304, n. 36, 16 C. J., p. 530, n. 65, 22 C. J., p. 81, n. 38, 39, 40, 41, 42, p. 82, n. 43.  (5) 16 C. J., p. 530, n. 65 New. (6) 2 C. J., p. 1074, n. 4–5 New.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. Charles O. Busick, Judge.  Reversed.

The facts are stated in the opinion of the court.

Thomas Ashby for Appellant.

3. Proof of *corpus delicti* in criminal case, note, 68 L. R. A. 33. See, also, 1 R. C. L. 494, 587; 8 Cal. Jur. 167.

U. S. Webb, Attorney-General, Robert W. Harrison, Chief Deputy Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

LAWLOR, J.—An information, filed by the district attorney of Sacramento County, charged the defendant herein with having, on the twelfth day of July, 1924, in his possession and under his custody and control, in the city of Sacramento, a 32.20 Colt's revolver, less than twelve inches in length, and capable of being concealed on his person, and being, at the time, a foreign-born person and not a naturalized citizen of the United States. He was tried and convicted of the offense charged, the verdict reading: "We, the Jury in the above-entitled cause, find the Defendant D. Quarez true name D. Juarez Guilty of the crime of carrying a concealed weapon, and being at the time an unnaturalized foreigner, as charged in the Information." In due course a motion for a new trial was interposed by the defendant and denied. The defendant appeals from the order denying his said motion for a new trial and from the judgment of conviction.

Section 2 of the act under which appellant was prosecuted (Stats. 1923, c. 339, p. 696) reads as follows:

"Sec. 2. On and after the date upon which this act takes effect, no unnaturalized foreign-born person and no person who has been convicted of a felony against the person or property of another, or against the government of the United States or of the State of California or of any political subdivision thereof shall own or have in his possession or under his custody or control any pistol, revolver or other firearm capable of being concealed upon the person. The terms 'pistol,' 'revolver,' and 'firearms capable of being concealed upon the person' as used in this act shall be construed to apply to and include all firearms having a barrel less than twelve inches in length. Any person who shall violate the provisions of this section shall be guilty of a felony and upon conviction thereof shall be punishable by imprisonment in a state prison for not less than one year nor for more than five years.

There is no dispute that, on the evening of July 12, 1924, the arresting officers while cruising about the city of Sacra-

mento in their automobile saw the appellant and another person in an alley situated in the vicinity of Seventh and O Streets; that upon the officers flashing their light on the two persons the latter fled, the officers following in pursuit; that the appellant was located in an old shed close by; that before his discovery in the shed he had thrown off his mackinaw; that the mackinaw lay at his feet and under and covered by it was the weapon above described. It is not contended that this evidence is insufficient to establish that appellant had "in his possession or under his custody or control" a weapon capable of being concealed upon the person. The only testimony other than that going to such possession was his extrajudicial statement to the arresting officers and the statement made at the preliminary examination in the police court, through an interpreter, to the effect that he was born in Mexico.

The principal contention on appeal is that this latter evidence was inadmissible and therefore the elements of foreign birth and non-naturalization were not proved. We quote from appellant's brief: "The principal question involved in this case centers on the admissibility of these very statements of the police officers relied upon by the prosecution as establishing the fact of foreign birth, namely, that appellant had admitted to them he was born in Mexico. To assume that these statements proved this fact is of course to assume the fact in issue. . .

"In the case at bar there is absolutely no evidence except appellant's extrajudicial statements which in any way tends to show foreign birth."

It is insisted by appellant that foreign birth is an essential part of the *corpus delicti* of the offense defined by the statute and therefore the extrajudicial statements of the appellant are not admissible as proof of such element of the crime. In other words, "that the fact of his being a foreign born citizen, if established, is a fact which must coexist with the act of possession of a weapon before any unlawful act is shown to have been committed and that it therefore constitutes a part of the *corpus delicti;* that therefore the declarations of the appellant alone were not sufficient to establish the fact of foreign birth and there being no other testimony on that subject the evidence is insufficient to support the verdict."

In support of this contention the case of *People* v. *Chadwick*, 4 Cal. App. 63 [87 Pac. 384, 389], among others, is cited, wherein it is declared: "The rule is clearly established in this state that the extrajudicial statements or admissions of a defendant, in the absence of other evidence of the commission of the crime charged against him are insufficient to establish his guilt (*People* v. *Jones*, 31 Cal. 565; *People* v. *Simonsen*, 107 Cal. 345 [40 Pac. 440]) ; and they are equally insufficient to establish the existence of any substantive or essential element of a crime charged against the defendant. . . . " Elsewhere it is contended that, "It follows that it is as necessary to the proof of a violation of the statute that the defendant be shown to belong to the proscribed class as it is that he committed the forbidden act. This fact being one essential element of the crime, it constitutes a part of the *corpus delicti* and must be proved as such. The *corpus delicti* consists of the elements of the crime. *People* v. *Tapia*, 131 Cal. 647 [63 Pac. 1001] ; *People* v. *Simonsen*, 107 Cal. 346 [40 Pac. 440] ; *People* v. *Vertrees*, 169 Cal. 404 [146 Pac. 890]."

The People cite many authorities to the effect that a slight amount of proof is only necessary to satisfy the law when proving a negative, in a case where a fact is peculiarly within the knowledge of the other party; and, other authorities, to the effect that having proven by competent evidence the foreign birth of the appellant, the allegation of the information that he had never been naturalized must be taken as true in the absence of proof to the contrary.

[1] It is readily apparent that section 2, quoted above, prohibits and makes punishable the carrying of concealed weapons under circumstances described therein. A reading of section 2 of the act indicates, so far as it is applicable to the instant case, that the legislature prescribed two elements for conviction thereunder, namely: (1) the possession of a concealed weapon of the type described therein, (2) by a foreign-born and unnaturalized person. That is, if the proof of the prosecution, under this section, were to stop with a showing that the person charged had carried, possessed or had under his custody or control a weapon of the prohibited type no offense would be proven. [2] In addition to this proof the prosecution has the burden of establishing that the

offender was an alien and, having proven this element of the offense, it is indicated by the authorities that "this status continues until the contrary is shown." Or, stated differently, "it was, therefore, unnecessary for the prosecution, after showing that the defendant was foreign born, to further show that he had never been naturalized." (*People* v. *Velasquez,* 70 Cal. App. 362 [233 Pac. 359].)

The *corpus delicti* of the offense defined in section 2 consists, as we have shown, of two elements—the second being the foreign nativity and non-naturalization of the appellant. [3] The rule is well settled and the authorities numerous in this state that the extrajudicial statements, admissions, or confession of a defendant cannot be used to establish any necessary element of the *corpus delicti* of the crime charged. The *corpus delicti* must be established by independent evidence before the extrajudicial statements, admissions, or confession of a defendant are admissible. (*People* v. *Jones,* 31 Cal. 565; *People* v. *Simonsen,* 107 Cal. 345 [40 Pac. 440] ; *People* v. *Johnson,* 47 Cal. App. Dec. 392 [238 Pac. 814].) We are not to be understood as holding that if the evidence of the statements, admissions, or confession of a defendant had been received in advance of a full measure of proof of the *corpus delicti,* which was later supplied, the mere inversion of the order of proof would be prejudicial to the defendant. (*People* v. *Besold,* 154 Cal. 363, 368 [97 Pac. 871].)

[4] Nor are we unmindful of the rule stated by respondent and commonly known as the "rule of convenience." It is thus stated in 22 Corpus Juris, at page 81, section 24: "In the administration of justice it is often wise to place the burden of producing evidence on the party best able to sustain it, and ambiguity, concealment, or evasion react with peculiar force on a pleader who asserts a fact and fails to produce the evidence, which if his assertion were true, would be in his possession. Hence it is very generally held that where the party who has not the general burden of proof possesses positive and complete knowledge concerning the existence of facts which the party having that burden is called upon to negative, or where for any reason the evidence to prove a fact is chiefly, if not entirely, within his control, the burden rests on him to produce the evidence,

although he is obliged to go no further than necessity requires. . . . ''

Again, in 16 Corpus Juris, page 530, section 998, it is said: ''Where the subject matter of a negative averment in the indictment, or a fact relied upon by defendant as a justification or excuse, relates to him personally or otherwise lies peculiarly within his knowledge, the general rule is that the burden of proof as to such averment or fact is on him.''

The case of *People* v. *Boo Doo Hong,* 122 Cal. 606 [55 Pac. 402], is cited in each of these sections, and also by respondent in support of its contention. An examination of that case discloses that the defendant therein was charged by information with the crime of wilfully and unlawfully practicing medicine without having first procured a certificate to so practice, as required by law. The trial court in its instructions, in effect, told the jury that the burden was on the defendant to prove that he had a certificate to practice and that in the absence of such proof it must be taken as true he had not procured one. The court declared: ''It is contended for appellant that the said instruction was erroneous and misleading, and that the verdict was not justified by the evidence, because in a criminal action the defendant is presumed to be innocent until he is proved guilty beyond a reasonable doubt, and this presumption continues through the entire trial, and the burden is upon the people to establish his guilt by proving every material allegation of the information; and that as the information charged that defendant had practiced medicine without having a certificate to do so, it devolved upon the people to prove that fact, and having entirely failed to offer any such proof he ought not to have been convicted, and his motion for new trial should have been granted.

''The general rule is undoubtedly as above stated, but there is a well-recognized exception to the rule, where there is a negative averment of a fact peculiarly within the knowledge of the defendant.

''Mr. Greenleaf, in his work on Evidence, volume 1, section 79, under the heading 'Negative Allegations,' says: 'But when the subject matter of a negative averment lies peculiarly within the knowledge of the other party, the aver-

ment is taken as true unless disproved by that party. Such
is the case in civil or criminal prosecutions for a penalty
for doing an act which the statutes do not permit to be done
by any persons, except those who are duly licensed therefor;
as, for selling liquors, exercising a trade or profession, and
the like. Here the party, if licensed, can immediately show
it without the least inconvenience; whereas, if proof of the
negative were required, the inconvenience would be very
great.' (Citing a large number of cases. See, also, 3 Rice
on Evidence, sec. 260, where the same rule is declared.)

"In 1 Jones' Law of Evidence, section 179, under the
heading 'Burden as to particular facts lying peculiarly
within knowledge of a party,' it is said: 'This is often
illustrated in prosecutions for selling liquors or doing other
acts without the license required by law. By a few authori-
ties the rule is prescribed that in such cases the prosecution
must offer some slight proof of the fact that no license has
been granted, for example, by producing the book in which
licenses are recorded; and, if the book fails to show that a
license has been granted, the burden is shifted upon the de-
fendant to prove the facts claimed by him; but the greater
number of authorities hold that where a license would be a
complete defense the burden is upon the defendant to prove
the fact so clearly within his own knowledge.' (Citing
cases.)

"We think the rule upon this subject generally recognized
and followed the correct one, and therefore conclude that the
court did not err in giving the instruction complained of,
and that the verdict was justified by the evidence."

There is no doubt that the above case enunciates the cor-
rect principle and that it has been consistently followed in
this state in those cases involving the unlawful practice of
medicine without a license. (*People* v. *Fortch,* 13 Cal. App.
770, 775 [110 Pac. 823]; *People* v. *Wah Hing,* 47 Cal.
App. 327, 331 [190 Pac. 643]; *People* v. *Goscinsky,* 52 Cal.
App. 62, 64 [198 Pac. 40]; *People* v. *Saunders,* 61 Cal. App.
341, 345 [215 Pac. 120].) It has also been extended to a
case where the defendant was charged by information with
the offense of carrying a concealed weapon upon his person
in violation of section 3 of the act of 1917 (Stats. 1917, p.
221). This section, which is really the counterpart of sec-
tion 5 of the act of 1923, made it a misdemeanor for anyone

without a license to carry such a weapon concealed upon his person. It was declared in *People* v. *Ross,* 60 Cal. App. 163, 166, 167 [216 Pac. 627, 628]: "It was not incumbent upon the prosecution to show that no license had been issued to appellant. The clause of the statute which excepts from its penal provisions those persons who have been licensed to carry firearms is so incorporated into and made such a substantial part of the definition of the offense that it doubtless was necessary to allege in the information that appellant was without a license to carry the pistol. There is such an allegation in the information, but it presents a negative which the prosecution was not called upon to prove, for the truth or falsity of the averment lay more immediately within the knowledge of the defendant himself. It is a well settled rule of law that where the negative of an issue does not permit of direct proof, or where the facts come more immediately within the knowledge of the defendant, the *onus probandi* rests upon him. This doctrine is illustrated in cases of practicing medicine without a license or of selling spirituous liquors without a license."

[5] But this exception to the general rule has, in this state, been confined to that particular line of cases where it becomes necessary, in order to constitute the offense charged, for the prosecution to prove the nonexistence of a license required by law. The burden of the issue is put on the defendant in such cases because it is easy for him to meet it. But the rule should not be applied so as to make less imperative, in the enforcement of the law, the duty of the prosecution to establish the charge. In other words, any deviation from the general rule should be strictly confined to the principle of "*ab inconvenienti.*" That this exception to the general rule is not of universal application in this state to criminal cases is recognized in *People* v. *Frey,* 165 Cal. 140, 145 [131 Pac. 127]. In that case the defendant was charged with a violation of section 476a of the Penal Code in drawing and issuing a draft upon a bank without having sufficient funds therein to meet it; the only evidence of the insufficiency of the funds was the extrajudicial confession of the defendant. In holding that the *corpus delicti* was not established the court declared: "We are fully mindful of the importance of the argument *ab inconvenienti,* but since the legislature has seen fit to make

proof of a negative proposition—namely, the nonexistence of funds or credit, an essential element of a crime, we cannot see our way to a conclusion authorizing hearsay evidence to establish that constituent part of the offense. If practical difficulties are involved, that is a matter for legislative adjustment. 'The rule is well established that a conviction cannot be had upon the extrajudicial confession of the defendant, unless corroborated by proof *aliunde* of the *corpus delicti.*' (*People* v. *Jones*, 123 Cal. 68 [55 Pac. 698]; . . .) We are aware of the fact that many cases properly hold very slight proof of the *corpus delicti* to be sufficient basis for the admission of a defendant's confession, but we know of none which sustains proof of the *corpus delicti* upon purely hearsay testimony. . . .

"Nor does this case come within the rule that negative allegations regarding matters peculiarly within the knowledge of the defendant need not be proven. *That is a special rule applicable to such prosecutions as those for practicing some profession or following some calling without the license provided therefor by law.*" (Italics added.)

In *People* v. *Whiteman*, 114 Cal. 338, 344 [46 Pac. 99, 101], which involved an alleged forgery, the court declared: "Suppose that he had admitted that he drew the Dixon check, and claimed that he had authority from Dixon to draw it, would this admission have put the burden upon him to show such authority?

"It would be a new departure in criminal law. It arises from a difficulty which is inherent in our system. We have inherited the idea, which we carefully place in all our constitutions, that an accused person must be confronted by his witnesses in court. State process cannot cross state borders, and hence justice is sometimes defeated. The courts have not created the difficulty, and cannot provide a remedy by depriving a defendant of the presumption of innocence and putting the burden upon him."

Epitomized, the legal situation is this: Appellant was convicted under section 2 of the act of 1923. That section, so far as is applicable to this case, contains two essential elements necessary to be proved before the *corpus delicti* of the offense is established, namely: (1) the fact that appellant owned or had in his possession or under his custody or control a weapon of the prohibited type, and (2) the fact

that appellant was a foreign-born and unnaturalized person. If the fact of alienage had been proved by competent evidence, under the authorities, as we have shown, this status would be presumed to have continued unless the contrary was proved by the accused. **[6]** And, the foreign nativity, being an essential element of the *corpus delicti,* should have been established by evidence independent of the extrajudicial statements, admissions, or confession of the accused, which the prosecution did not furnish; and, this fact of foreign birth not coming within the rule of *"ab inconvenienti,"* it follows that the evidence adduced is insufficient to establish the *corpus delicti* of the offense defined in section 2 of the act. The judgment and order are reversed and a new trial ordered.

Lennon, J., Richards, J., Shenk, J., Waste, J., Seawell, J., and Myers, C. J., concurred.

Rehearing denied.